UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDWARD "TY" GRAHAM,

    Plaintiff,

    v.

CINGULAR WIRELESS LLC,

    Defendant.

NO. C05-1810JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion to dismiss (Dkt. # 8) from Defendant Cingular Wireless LLC ("Cingular"). Neither Cingular nor Plaintiff Edward Graham has requested oral argument, and the court finds this motion appropriate for disposition based on the parties' briefs and accompanying declarations. For the reasons stated below, the court GRANTS Cingular's motion in part and DENIES it in part.

## II. BACKGROUND

Plaintiff Graham was a Cingular employee until his termination in September 2005. In July 2005, Plaintiff negotiated an employment agreement with Siva Limited ("Siva"). By its terms, the employment agreement was "subject to Siva successfully completing acquisition of approximately 32% economic interest in Idea Cellular Limited, India" ("Idea"). Weisbecker Decl. Ex. B. Cingular owned the interest in Idea that Siva sought to acquire. Despite the

ORDER- 1

contingency in the employment agreement, it provided Mr. Graham with a signing bonus of one million dollars, and provided that "[o]nce paid," the signing bonus was "not subject to any demand for return or refund." Id. According to Mr. Graham's first amended complaint, he signed the agreement and Siva paid him one million dollars. First Amended Complaint at ¶ 2.11.[1] The complaint also alleges, however, that Cingular "has possession of the signing bonus in this District." Id. at ¶ 2.18. The complaint does not explain how Cingular acquired possession of the signing bonus.

Before terminating Mr. Graham, Cingular allegedly promised him that he would receive a severance package including salary, a prorated bonus, and medical benefit expenses. Id. at ¶ 2.4. When Cingular ultimately terminated him, he did not receive a severance package or other compensation. Id. at ¶ 2.13.

In this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Cingular alleges that Mr. Graham has not stated a claim for tortious interference with his employment contract with Siva, and that the Employee Retirement Income Security Act ("ERISA") preempts Mr. Graham's state law claims relating to his severance package.

## III.  DISCUSSION

When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 403 F.3d 1050, 1055 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). Dismissal for failure to state a claim should not be granted "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

---

[1] As Mr. Graham's first amended complaint is the operative pleading in this action, the court relies on it in its discussion of Cingular's motion.

ORDER- 2

relief." Id. (internal quotations and citations omitted). The court's review of the record on a Rule 12(b)(6) motion is limited to the complaint and documents referenced within the complaint. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).

**A.    Mr. Graham Has Not Stated a Tortious Interference Claim.**

Mr. Graham alleges that Cingular interfered with his "contractual right and expectancy to a non-refundable $1 million signing bonus" from Siva. Under Washington law, there are five elements to Mr. Graham's claim:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

Leingang v. Pierce County Medical Bureau, 930 P.2d 288, 300 (Wash. 1997).

Mr. Graham's pleadings establish definitively that Cingular did not interfere with his contractual right to a signing bonus from Siva. His pleadings admit that he received the bonus from Siva. His pleadings do not allege that Cingular slowed or otherwise interfered with his receipt of the bonus. Mr. Graham therefore can prove no set of facts consistent with his complaint that would make Cingular liable for interfering with his contract to receive a signing bonus.

Because he cannot prove interference with a contractual relationship, Mr. Graham must point to a "business expectancy" with which Cingular interfered. According to his allegations, Cingular "has possession of [his] signing bonus." The court accepts his allegation at face value, although it notes that Cingular has provided evidence beyond the pleadings demonstrating that Mr. Graham agreed to deposit his signing bonus in an escrow account from which neither he nor Cingular can withdraw without mutual consent. McKay Reply. Decl. at ¶ 2 & Ex. A. Even on its face, however, Mr. Graham's allegation does not establish interference with a "business expectancy." A business expectancy is an expectation of

ORDER- 3

business with a third party.  <u>Calbom v. Knudtzon</u>, 396 P.2d 148, 151 (Wash. 1964).  In <u>Calbom</u>, the Washington Supreme Court noted that the Restatement of Torts "crystallizes and defines" the tortious interference cause of action in Washington.  <u>Id.</u>  Under the Restatement, a defendant interferes with a business expectancy by either inducing a third party not to enter into a business relationship with the plaintiff, or by inducing the termination of an at-will business relationship between plaintiff and a third party.  <u>Id.</u> (citing RESTATEMENT OF TORTS § 766 cmt. c).  To make a claim for tortious interference with a business expectancy, Mr. Graham must point to an expectancy of business with a third party, he must allege that Cingular was aware of the expectancy, and he must allege that Cingular interfered with the expectancy.  <u>Id.</u> at 152-53 ("[K]nowledge of the existence of the business relationship in issue is an essential element in establishing liability for interference . . .").  Mr. Graham has not done so.  He has not identified a business expectancy with a third party,[2] and, consequently, he has not alleged that Cingular was aware of the expectancy.  At most, he has alleged that Cingular has interfered with his unfettered enjoyment of his money.  His allegations fail, as a matter of law, to establish a tortious interference claim.  The court dismisses Mr. Graham's tortious interference claim without prejudice.

**B.     The Court Cannot Reach Cingular's ERISA Preemption Argument on a Rule 12(b)(6) Motion.**

Mr. Graham has brought state law claims for breach of his employment contract, breach of the implied covenant of good faith and fair dealing, misrepresentation, detrimental reliance, promissory estoppel, and unjust enrichment.  Cingular contends that ERISA preempts all of these claims.  The gravamen of Cingular's preemption defense is that Mr. Graham's claims are based entirely on his alleged entitlement to a severance package

---

[2] The only third party that Mr. Graham mentions is Siva, and there is no indication that he had a legitimate expectancy of business with Siva after receiving his signing bonus.

ORDER- 4

1 including severance wages, a prorated bonus, and health care benefits.  Cingular claims that

2 its ERISA plan governs severance to employees, and provides copies of its ERISA plans in

3 support of its claim.

4 The court cannot determine the validity of Cingular's preemption defense on the

5 instant motion to dismiss.  With certain exceptions, the court's review of a motion to dismiss

6 for failure to state a claim is limited to the complaint and documents specifically referenced in

7 the complaint.  Mr. Graham does not mention Cingular's ERISA plan in his complaint, nor

8 does he suggest that he seeks ERISA benefits.  Cingular urges the court to read his complaint

9 as a request for benefits under its ERISA plan, but the complaint does not compel such a

10 reading.  Mr. Graham's complaint is consistent with an allegation that Cingular made a

11 promise to him to provide a particular severance package without regard to an ERISA plan.  If

12 Mr. Graham could prove that allegation, he could prove a claim beyond the preemptive scope

13 of ERISA.

14 The court does not render advisory rulings, and thus offers no comment on the merits

15 of Cingular's ERISA preemption argument or Mr. Graham's counter-argument.

16 **IV.   CONCLUSION**

17 For the reasons stated above, the court GRANTS Cingular's motion to dismiss in part

18 and DENIES it in part (Dkt. # 8).  The court dismisses Mr. Graham's tortious interference

19 claims without prejudice.

20 Dated this 14th day of February, 2006.

21

22

23 JAMES L. ROBART
United States District Judge

24

25

26 ORDER- 5